Filed 7/24/15  Ma Laboratories v. Shen CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MA LABORATORIES, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> BING SHEN, <br><br> Defendant and Appellant. | H040109 <br> (Santa Clara County <br> Super. Ct. No. 113CV244982) |

Ma Laboratories, Inc. (Ma Labs) sued its former employee, Bing Shen (Shen), for breach of contract, among other claims.  Ma Labs asserted that Shen had breached the confidentiality provisions of two separate agreements signed in March and September 2010 (collectively, the agreements).  In the agreements, the parties settled two claims asserted by Shen against Ma Labs:  (1) a wage claim brought before the California Department of Labor Standards Enforcement (DLSE), and (2) a later-asserted overtime claim.  Ma Labs alleged that it was subsequently sued by 10 employees in a class action lawsuit, *Tian v. Ma Laboratories, Inc.* (the *Tian* litigation).  And Ma Labs claimed that one or more of the plaintiffs "had been informed that . . . Shen had 'won her case' " and that Shen had violated the confidentiality provisions of the agreements by disclosing the approximate amount Ma Labs had paid to settle her wage claim.

Shen filed a special motion to strike the complaint under Code of Civil Procedure section 425.16 (an anti-SLAPP motion).[1] A SLAPP suit is one in which a plaintiff "seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055.) An anti-SLAPP motion is resolved through a two-step process in which the court decides (1) if the defendant has shown that the challenged claim arose out of his or her constitutionally protected petitioning or speech activity; and (2) assuming the defendant has met its burden to show he or she was engaged in protected activity, whether the plaintiff has established a probability of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).)

The complaint contained four causes of action: (1) breach of two written contracts; (2) breach of the implied covenant of good faith and fair dealing; (3) fraud and deceit; and (4) request for injunctive relief. The court denied the motion as to the first, second, and fourth causes of action, concluding that Shen had not established the first prong of the anti-SLAPP statute, i.e., that the claim arose out of her protected petitioning or speech activity. But the court granted the motion as to the third cause of action for fraud, which ruling Ma Labs did not appeal.

Shen appeals the order as it relates to the first, second, and fourth causes of action. She contended below that the special motion to strike should be granted because (1) the claims against her arose out of her protected speech and petitioning activity in connection with her DLSE wage claim; and (2) Ma Labs could not show a probability of prevailing because Shen at no time breached the confidentiality provisions of the agreements. On

---

[1] "SLAPP is an acronym for 'strategic lawsuit against public participation.' " (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

Further statutory references are to the Code of Civil Procedure unless otherwise stated.

appeal, Shen makes a new argument that her claims arose out of the making of statements in connection with the *Tian* litigation, which were protected communications for purposes of the anti-SLAPP statute.

We conclude that Shen is precluded from raising for the first time on appeal her argument that the claims arose out of her protected activity of making statements in connection with the *Tian* litigation. And on the merits of what she argued below, we conclude that Shen's alleged communications about her DLSE claims were not protected under the anti-SLAPP statute because those alleged communications occurred after dismissal of the DLSE proceedings. But even were the alleged communications protected, we nonetheless would find that Ma Labs satisfied its burden of showing a probability of prevailing on its claims. Accordingly, we will affirm the order denying the special motion to strike the first, second, and fourth causes of action of the complaint.

PROCEDURAL HISTORY

I.      *The Complaint*

Ma Labs filed suit against Shen on or about April 19, 2013. It alleged four causes of action in its unverified complaint: breach of two written contracts; breach of the implied covenant of good faith and fair dealing; fraud and deceit; and request for injunctive relief.

In the general allegations of the complaint common to each of the four causes of action, Ma Labs alleged, among other things,[2] that it was a computer components distributor having its corporate headquarters and one of its distribution/warehouse facilities in San José, and that Shen worked at the San José facility in the Inventory Department from September 2006 to September 2010. Shen, in October 2009, asserted "wage and hour claims (meal period/break period)" with the DLSE against Ma Labs (hereafter, the wage dispute), and was represented by attorney Thomas Marc Litton.

_____

[2] To avoid repetition, we will sometimes dispense with the prefatory "Ma Labs alleged" in describing the allegations of the complaint.

3

(Litton is counsel for Shen in the present action.) Ma Labs and Shen settled the wage dispute on May 23, 2010. On June 6, 2010, they signed a "Confidential Settlement Agreement" (hereafter, the wage settlement agreement). The wage settlement agreement contained a confidentiality provision (paragraph 8) that read in part: " 'Confidentiality. The terms and conditions of this Settlement Agreement and Release are strictly confidential. . . . Plaintiff agrees that she will not reveal the existence or any of the contents of this Agreement, including its terms, conditions, and the fact or amount of the payment made in settlement of the released Claims, to anyone other than her immediate family, her attorneys and any tax or accounting consultant . . . A violation of the aforesaid confidentiality obligations by Shen . . . shall be a material breach of this Agreement. Ma Labs shall, in the event of such breach, be entitled to affirm the Agreement and sue to recover damages for such breach, and for such other legal and equitable remedies as may be provided by law.' " (Emphasis omitted.)

After resolution of the wage dispute, Ma Labs requested that Shen return to work. Shen refused, and she, through Litton, asserted further retaliation and overtime claims (hereafter, the overtime dispute). The parties settled the overtime dispute, and on September 29, 2010, they signed a "Confidential Severance Agreement" (hereafter, the severance agreement). The severance agreement contained a confidentiality provision (paragraph 11) containing language nearly identical to the confidentiality provision in the wage settlement agreement, but imposed upon Shen a *unilateral* obligation of confidentiality.

Ma Labs alleged that in the fall of 2010, after the execution of both agreements, Shen breached the confidentiality provisions of the wage settlement agreement "and/or" the severance agreement "by disclosing to third persons that she had complained of wage, hour and other employment violations to [*sic*] Ma Labs and she had prevailed, including disclosing the amount of the settlement. [She] also disclosed the terms of the Agreement

4

referenced above,[3] including the approximate amount of her initial settlement to third persons," and those disclosures were later disseminated to other "current and/or former employees of Ma Labs."

Ma Labs also alleged it was sued on March 1, 2011, by 10 employees in the *Tian* litigation. One or more of the *Tian* plaintiffs indicated "they had been informed that . . . Shen had 'won her case.' More recently, in early 2013, Ma Labs was informed for the first time that these plaintiffs had been told by . . . Shen . . . of the approximate dollar amount paid by Ma Labs to . . . Shen" under the wage settlement agreement. Ma Labs further alleged it was damaged as a result of Shen's breaches of the two agreements. Part of those damages consisted of the "substantial attorney's fees and costs *qua* damages in defending the [*Tian*] litigation incited by said breach(es)."

In the first cause of action, Ma Labs alleged the confidentiality provisions were material terms of the agreements. Shen "breached the confidentiality terms of both agreements by disclosing to third parties the terms of the agreements," and Ma Labs was damaged as a result of the breaches.

In the second cause of action, Ma Labs alleged there was an implied covenant of good faith and fair dealing that was part of the agreements. Shen breached the covenant of good faith and fair dealing implied in both agreements "by willfully violating a material term of the Agreements (confidentiality) to harm Ma Labs," and it was damaged as a result.

In the third cause of action, Ma Labs alleged that at the time Shen made the promises under the agreements "to hold in strict confidence the disposition of her claims and the material terms of the settlement(s)," she had no intention of performing them.

---

**3** We surmise the reference to "Agreement referenced above" was intended to be to both agreements, since (1) there were two agreements identified and described in the complaint, (2) neither was identified in the complaint by the defined term "Agreement," and (3) there is a reference in a paragraph of the complaint to "the two Agreements referenced above."

5

She made these confidentiality promises with the intent to deceive Ma Labs, which was damaged thereby.

In the fourth cause of action, Ma Labs alleged that "unique, extraordinary, severe and irreparable injury" resulted from breaches of the agreements, it was continuing to sustain severe irreparable injury from the breaches, and it had no adequate remedy at law to address them. Accordingly, Ma Labs sought injunctive relief to prohibit further disclosure of the terms, conditions, fact, or amount of any settlement related to the agreements.

II.     *The Special Motion to Strike*

On June 10, 2013, Shen filed a special motion to strike the complaint under the anti-SLAPP statute. She asserted that each of the four causes of action arose out of the exercise of her protected petitioning activity in connection with her DLSE claim, and that Ma Labs could not establish a probability of prevailing on its claims. Shen submitted her own declaration in which she denied she had ever made any disclosures violating the confidentiality provisions of the agreements, and a declaration of Litton in support of the motion to strike.

Ma Labs opposed the special motion to strike. It submitted 10 declarations and a request for judicial notice containing as exhibits various pleadings and declarations submitted in other cases.

After a hearing on the special motion to strike, the court issued an order partially granting and partially denying the motion. The court held that the alleged conduct in the first, second, and fourth causes of action did not arise out of protected activity, and it denied the motion to strike those causes of action on that basis. But the court granted the motion to strike the third cause of action for fraud, holding that Shen's conduct arose out of protected activity and Ma Labs had failed to demonstrate a probability of prevailing on that claim. Shen appeals the court's order as it relates to the first, second, and fourth causes of action. Ma Labs did not appeal the court's order on the third cause of action for fraud, which has been dismissed from the complaint.

6

I.        *Anti-SLAPP Motions to Strike*

SLAPP suits may be disposed of summarily by a special motion to strike under section 425.16, which is "a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.)  The statute provides:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)  The Legislature has directed that the language of the statute be "construed broadly." (§ 425.16, subd. (a).)

Subdivision (e) of section 425.16 identifies four general categories of protected activities.  It provides:  "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (§ 425.16, subd. (e).)  Conduct or speech that is potentially subject to anti-SLAPP protection under clauses (1) and (2) of section 425.16, subdivision (e)—unlike clauses (3) and (4)—do not have a limitation that the speech or petitioning rights must concern an issue of public interest.  (*Briggs v. Eden Council for Hope &*

*Opportunity* (1999) 19 Cal.4th 1106, 1117 (*Briggs*).) Shen did not identify below the specific clause of section 425.16, subdivision (e) that made her alleged actions protected activity under the statute. But it is clear that her anti-SLAPP motion concerns activity that may have been subject to protection under subdivision (e)(2), namely, "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body." (§ 425.16, subd. (e)(2) (hereafter § 425.16(e)(2).)

As noted above, a motion to strike under section 425.16 is analyzed and resolved by "the court . . . engag[ing] in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the defendant's right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon*, *supra*, 29 Cal.4th at p. 67.) Thus, "[o]nly a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*), original italics.)

"Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).) However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).) In performing our de novo review, we " 'conduct[] an independent review of the entire record. [Citations.]' " (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139

Cal.App.4th 659, 672 (*Paulus*).) "[O]ur review is conducted in the same manner as the trial court in considering an anti-SLAPP motion. In determining whether the defendant . . . has met its initial burden of establishing that the plaintiff's . . . action arises from protected activity, we consider 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b)(2); [citations].) The second prong—i.e., whether the plaintiff . . . has shown a probability of prevailing on the merits—is considered under a standard similar to that employed in determining nonsuit, directed verdict or summary judgment motions. [Citation.] '[I]n order to establish the requisite probability of prevailing [citation], the plaintiff need only have " 'stated and substantiated a legally sufficient claim.' " [Citations.]' " (*Ibid.*)

We review the trial court's decision, not its rationale. "If the trial court's decision denying an anti-SLAPP motion is correct on any theory applicable to the case, we may affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion. [Citation.]" (*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1307; see also *Bernardo v. Planned Parenthood Federation of America* (2004) 115 Cal.App.4th 322, 357 (*Bernardo*) [appellate court decides independently whether ruling on anti-SLAPP motion was correct, but need not decide propriety of trial court's reasoning].)

III. *The Motion to Strike Was Properly Denied*

    A. Scope of Shen's Special Motion to Strike

        1. *Arguments Made Below*

As a threshold matter, we must first identify the arguments that are properly before this court. In order to do so, we will review relevant portions of the record to determine the positions asserted by Shen and Ma Labs in the trial court. In reviewing Shen's position below, we will omit discussion regarding her arguments in support of her motion

9

to strike the third cause of action for fraud. As noted, the motion as to that claim was granted, and Ma Labs has not appealed that ruling.

Shen argued below that the complaint arose out of her constitutionally protected activity within the meaning of the anti-SLAPP statute. She contended that each of Ma Labs' claims "[arose] out of Shen's initial activity of petitioning the DLSE, followed by her gaining relief from Ma Labs' Labor Code violations in a the [*sic*] first negotiated settlement agreement, and dismissing further claims for 'retaliation and overtime related claims' in the second settlement agreement." She stated that "[b]y Plaintiff's own allegations, Defendant Shen's alleged wrongful conduct arises directly out of her protected activity of asserting claims of Labor Code claims against Ma Labs, making false 'promises' during the resolution of her claims and, allegedly, publicly discussing the resolution of those claims with other Ma Labs employees. Therefore, . . . Defendant Shen has met her burden under the first prong of the Anti-SLAPP test that Plaintiff's purported claims arise out of protected speech."

In Shen's reply papers filed in the trial court, she again asserted that (1) the gravamen of Ma Labs's complaint against her involved the allegation that she had breached the confidentiality provisions of the two agreements; and (2) the allegations of the complaint thus fell "squarely within [the exercise of Shen's] protected activity." In support of her contention that the activity was protected, Shen cited *Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834 for the propositions that "protected free speech activities include negotiating and execution of a release agreement concerning the pursuit of legal claims." Further, Shen asserted that her "free speech activities are at the heart of Ma Labs' claims. Ma Labs claims Defendant Shen's alleged statements . . . were: 'disclosing to third parties that she had complained of wage, hour and other employment violations to Ma Labs and she had prevailed, including disclosing the amount of the settlement.' [Citation.] Ma Labs further asserts that Defendant Shen 'breached the Confidential Settlement Agreement by disclosing to Ms. Susana [*sic*] Lou,

10

Assistant Manager of Ma Labs Inventory Department, that she had "won the lawsuit" against the Company.' [Citation.]"

At the hearing on the motion, Shen reiterated her position that the claims in the complaint arose out of protected activity. She asserted the conduct alleged to be actionable—"that she won her case and got some money for it"—"directly related to her act of discussing a case that she evidently thought that she'd won," and that it constituted "free speech comment[s]."

### 2. Shen's New Contentions Are Barred

On appeal, Shen has significantly expanded her argument as to why the claims are ones "arising from" her protected activities. She now argues that "[s]tatements made about, and in connection with, civil litigation are protected communications under consideration by a judicial body. [Citations]" She argues that her alleged statements concerning her disputes with Ma Labs "were made in connection with the pending *Tian* case about the exact substantive issues asserted in the *Tian* case." And she argues that "merely encouraging others to pursue speech or petition rights is itself an act of furthering petitioning activities" protected under the anti-SLAPP statute.

In its respondent's brief, Ma Labs objects to the opening brief, asserting that Shen's contention that her alleged statements were protected activity because they were made in connection with the *Tian* litigation constitutes a new argument not raised below. Ma Labs asserts that Shen waived this argument by not presenting it before the trial court.

It is the general rule that " 'issues not raised in the trial court cannot be raised for the first time on appeal.' [Citation.]" (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417 (*Sea & Sage Audubon Society*); see also *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603.) As a related principle, " '[a] party is not permitted to change his [or her] position and adopt a new and different theory on appeal.' " (*In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501.) The rationale for both of these tenets is that permitting consideration of new theories at the appellate level " 'would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.'

[Citations.]" (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12 (*Cable Connection*); *In re Marriage of Walker* (2006) 138 Cal.App.4th 1408, 1418.) The principles that foreclose a party from raising issues for the first time on appeal are equally applicable in the context of reviewing special motions to strike under the anti-SLAPP statute. (See, e.g., *Roger Cleveland Golf Company, Inc. v. Krane & Smith, APC* (2014) 225 Cal.App.4th 660, 685 & fn. 11; *Hunter v. CBS Broadcasting, Inc.* (2013) 221 Cal.App.4th 1510, 1526; *Bently Reserve L.P. v. Papaliolios* (2013) 218 Cal.App.4th 418, 436.)

Shen asserts in her reply brief on appeal that she raised the argument in the trial court that her speech was connected to the *Tian* litigation. In support of her position, Shen quotes from a passage of the transcript at the hearing on the motion in which her counsel argued: "[T]he Plaintiffs [*sic*] have indicated that the harm involved is the fact that she has made this [statement], and therefore has led people to assume [*sic*] Ma Labs on a claim that is similar to what Ms. Shen raised in the [L]abor [B]oard claim. So for [Ma Labs,] saying that her speech was the crux of what their claim is all about, therefore it is directly related to the exercise of free speech."

From our reading of the transcript of the hearing—and from our reading of the remainder of the appellate record—we do not find that Shen argued below that her alleged statements constituted protected activity because they were made *in connection with* the *Tian* litigation. At most, her contentions were that Ma Labs contended that she had violated the confidentiality provisions of the agreements, that this alleged action was protected activity, and that Ma Labs claimed it had been damaged by the alleged breaches by having to defend the subsequent *Tian* litigation.

Nor do we agree with Shen that it is appropriate for us to consider her theory— unasserted below—because it involves a pure question of law. The California Supreme Court has explained: "On a number of occasions, however, appellate courts have relaxed this rule [that issues unasserted below cannot be raised for the first time on appeal] and have permitted a party to raise belatedly 'a pure question of law which is presented on

undisputed facts.' [Citations.] This forgiving approach has been most frequently invoked when 'important issues of public policy are at issue.' [Citations.]" (*Sea & Sage Audubon Society*, *supra*, 34 Cal.3d at p. 417; see also *Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 167 ["whether the general rule [of forfeiture] shall be applied is largely a question of the appellate court's discretion"].)

We do not believe this is an instance in which it is appropriate to relieve Shen of her obligation of giving notice to counsel and the trial court of her new theory in support of her contention that the complaint should be stricken under the anti-SLAPP statute. First, it is unclear that her new argument involves a pure question of law. Second, it is probable that Ma Labs—had Shen made the argument below—would have addressed it with further argument and, possibly, with additional evidence. (Cf. *Munro v. Regents of University of California* (1989) 215 Cal.App.3d 977, 988-989 [declining to consider new theory on appeal because it would have been unfair to party who had successfully moved for summary judgment without benefit of having been able to respond to theory at trial].) We therefore decline Shen's request that we address the new theory on appeal. To consider Shen's new contention at this late stage of the proceedings " 'would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.' [Citations.]" (*Cable Connection*, *supra*, 44 Cal.4th at p. 1350, fn. 12.) But even if we were to consider her new argument on appeal, and even assuming we agreed that her statements were protected under the first prong of the anti-SLAPP analysis, we would still affirm the order denying the motion to strike because, as discussed below in Section I.C., Ma Labs has shown a probability of prevailing on its claims.

B. Shen's Alleged Underlying Conduct Was Not Protected Activity

In determining whether denial of Shen's special motion to strike the complaint was proper, we first examine whether Shen sustained her burden of making a threshold showing that her alleged activity on which the complaint was based was protected under the anti-SLAPP statute. (*Equilon*, *supra*, 29 Cal.4th at p. 67.) As noted above, Shen asserted that the claims in the complaint arose from "her protected activity of asserting

13

claims of Labor Code claims against Ma Labs, . . . and, allegedly, publicly discussing the resolution of those claims with other Ma Labs employees."

As the California Supreme Court has explained, in order to determine whether the cause of action is one "arising from" the defendant's protected activity (§ 425.16, subd. (a)), "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]" (*Navellier*, *supra*, 29 Cal.4th at p. 89, original italics.) It is not enough for the defendant to show that the plaintiff's lawsuit was filed *after* the defendant engaged in protected activity, or that the claim was " 'triggered' by protected activity." (*Ibid.*; see also *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76-78.)

Here, the activity of which Ma Labs complains involves Shen's alleged breaches of the confidentiality provisions of both settlement agreements. In the breach of contract claim, Ma Labs alleged that Shen breached the agreements "by disclosing to third persons that she had complained of wage, hour and other employment violations to [*sic*] Ma Labs and she had prevailed, including disclosing the amount of the settlement." Likewise, the second cause of action was based upon Shen's alleged breaches of the covenant of good faith and fair dealing implied in both agreements "by willfully violating a material term of the Agreements (confidentiality) to harm Ma Labs." And in the fourth cause of action, Ma Labs alleged that it had sustained irreparable injury from Shen's breaches of the two agreements, and it required injunctive relief to prohibit further disclosure of the terms, conditions, fact, or amount of any settlement related to the agreements.

To be protected, the alleged conduct must constitute "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16(e)(2).) This can be determined from a three-stage analysis, asking whether (1) there was an "issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding"; (2) Shen's alleged communications were made "in connection with" this issue; and (3) the causes of action pleaded by Ma

14

Labs "aris[e] from" those communications. (*Ibid.*; see *City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 372.)

We can readily identify the "other official proceeding" here as being Shen's DLSE proceeding. Such an administrative proceeding is one contemplated under section 425.16(e)(2). (See *Kurz v. Syrus Systems, LLC* (2013) 221 Cal.App.4th 748, 759 [claim before Unemployment Insurance Compensation Board "involves the litigation of a claim for unemployment insurance benefits in an official proceeding authorized by law" under section 425.16(e)(2)].) But was there "an issue under consideration or review" (§ 425.16(e)(2)) by that administrative body? Under section 425.15(e)(2), "a matter is 'under consideration' if it 'is one kept "before the mind," given "attentive thought, reflection, meditation." [Citation.] A matter under review is one subject to "an inspection, examination." ' [Citation.]" (*Maranatha Corrections, LLC v. Department of Corrections & Rehabilitation* (2008) 158 Cal.App.4th 1075, 1085 (*Maranatha*).)

Here, from the evidence presented in connection with the special motion to strike, the timeline was as follows: (1) Shen's DLSE claim was filed on or about June 29, 2009; (2) there was a hearing set for March 23, 2010; (3) the parties resolved the claim on March 23, 2010 at the DLSE offices, immediately prior to the hearing;[4] (4) the settlement was thereafter formally documented, and the wage settlement agreement was signed by Ma Labs and by Shen on June 8 and 9, 2010, respectively; (5) Shen's counsel notified the DLSE by fax on June 8, 2010, that the matter had been resolved; and (6) the DLSE issued

---

[4] There is a discrepancy in the record regarding the date of the DLSE hearing and oral settlement of Shen's administrative claim. Shen declared that she "recall[ed]" that the hearing and oral settlement occurred in late May 2010. Attorney Musto, who represented Ma Labs in that matter, indicated it was settled on or about May 23, 2010, with the formal agreement signed on or about June 6, 2010. And the complaint alleges it was settled on or about May 23, 2010. In his declaration in opposition to the motion to strike, Musto identified the date as *March* 23, 2010, and supported that date with an email exhibit. While it appears the true date was March 23, 2010, the discrepancy is not material to our analysis.

15

a formal dismissal of the proceedings on June 9, 2010. Thus, as of the fall of 2010—when Ma Labs alleges in its complaint that Shen breached the confidentiality provisions of the agreements, there was nothing pending before the DLSE. Accordingly, Shen's alleged statements about the DLSE claim and settlement did *not* represent "issue[s] under consideration or review" before the DLSE. (§ 425.16(e)(2); see *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1270 [statements protected under section 425.16(e)(2) if they "are made 'in connection with' pending or anticipated litigation"].)

*Applied Business Software, Inc. v. Pacific Mortgage Exchange, Inc.* (2008) 164 Cal.App.4th 1108 (*Applied Business*), cited by Ma Labs, is instructive. There, the parties had entered into a written agreement to settle a federal copyright lawsuit, and that suit was dismissed. (*Id.* at p. 1111.) The agreement provided that the defendant licensee (Pacific) would cease using the plaintiff licensor's (Applied's) software, and the defendant would certify the software had been deleted from its computers and that it had returned all physical copies of the software to the plaintiff. (*Id.* at p. 1112.) After the defendant had allegedly failed to provide the proper certifications and had used plaintiff's software without authorization, the plaintiff filed a state court action alleging claims for breach of the settlement agreement and for specific performance. (*Id.* at pp. 1112-1114.) The defendant filed a special motion to strike the complaint. (*Id.* at p. 1114.) The trial court denied the motion and the defendant appealed.

The appellate court affirmed. It analyzed the "protected activity" prong of the defendant's anti-SLAPP motion as follows: The "[d]efendant's acts on which [the] plaintiff's complaint is based are defendant's alleged failure to provide the certification called for in the settlement agreement, and defendant's alleged use of plaintiff's software after the time set out in the settlement agreement for ceasing use of it. Neither of those alleged actions by the defendant can reasonably be said to have been taken by defendant in furtherance of its right of petition or free speech in connection with a public issue." (*Applied Business*, *supra*, 164 Cal.App.4th at p. 1117.) Moreover, the court rejected the defendant's position that simply because the suit involved a settlement agreement, it

thereby was one "arising from" the defendant's protected activity. (*Ibid.*) The court held that "[u]nder the explanatory provisions in subdivision (e) of section 425.16, defendant's entering into the settlement agreement during the pendency of the federal case was indeed a protected activity, but defendant's subsequent alleged breach of the settlement agreement *after the federal case was concluded* is not protected activity because it cannot be said that the alleged breaching activity was undertaken by defendant in furtherance of defendant's right of petition or free speech, as those rights are defined in section 425.16." (*Id.* at p. 1118, italics added.)

Shen's alleged statements made months after the disposition of her claim filed with the DLSE were not protected under section 425.16(e)(2) because they did not concern "issue[s] under consideration or review." Accordingly, applying the reasoning in *Applied Business*, Shen has not established that the claims in the first, second, and fourth causes of action arose out of her protected speech activity.

### C.  Ma Labs Has Shown Its Claims Have Minimal Merit

Because we have concluded that Shen's alleged underlying conduct was not protected under the anti-SLAPP statute, we would ordinarily eschew discussion of the second "merits" prong. (See, e.g., *Applied Business*, *supra*, 164 Cal.App.4th at pp. 1118-1119.) But even if we were to consider Shen's new argument on appeal, and even assuming we agreed that her statements were protected under the first prong of the anti-SLAPP analysis, we would still affirm the order denying the motion to strike because Ma Labs has shown a probability of prevailing on its claims.

To defeat Shen's anti-SLAPP motion under the second prong of the analysis, Ma Labs " 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by [them] is credited.' [Citations.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 817 (*Wilson*), superseded by statute on other grounds as noted in *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 547; see also *Briggs*, *supra*, 19 Cal.4th at

17

p. 1121.)  Here, Shen does not challenge the sufficiency of the complaint, and we conclude the complaint is legally sufficient.  We thus need only address whether Ma Labs made a prima facie showing in support of its contract claims; that is, whether it established that (1) the parties entered into the agreements; (2) Ma Labs performed under the agreements or was excused from performing under them; (3) Shen breached the agreements; and (4) Ma Labs was damaged as a result of Shen's breaches.  (See *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1614.)  It is the question of whether Shen breached the confidentiality provisions of the two agreements that is the chief issue in dispute.  And we note the fact that speech is involved does not provide Shen with immunity from suit under the anti-SLAPP statute.  As the California Supreme Court has held:  "[A]s the [anti-SLAPP] statute is designed and as we have construed it, a defendant who in fact has validly contracted not to speak or petition has in effect 'waived' the right to the anti-SLAPP statute's protection in the event he or she later breaches that contract."  (*Navellier*, *supra*, 29 Cal.4th at p. 94; see also *Sanchez v. County of San Bernardino* (2009) 176 Cal.App.4th 516, 528 [First Amendment free speech rights may be waived by contract].)

Because Shen admitted in her declaration that she signed the agreements, we need not address the first element of a breach of contract case (i.e., the existence of an agreement).  Likewise, Shen presents no argument negating the second element—that Ma Labs performed under the agreements or was excused from performance under them.  While Shen asserted below that *Ma Labs*, not she, breached the confidentiality clauses of the two agreements[5]—an assertion to which Ma Labs responded by submitting several declarations of company officers and employees stating they did not make any

---

[5] Because the confidentiality provisions of the severance agreement (unlike the wage settlement agreement) imposed a unilateral obligation upon Shen—i.e., they did not contain language requiring Ma Labs to keep the settlement confidential—it is uncertain whether Shen could properly claim the company breached a confidentiality obligation with respect to the severance agreement.

disclosures concerning the settlement—she did not argue, and does not argue on appeal, that Ma Labs did not satisfy this second element of its contract claim. Shen has therefore forfeited any such contention. (See *Paulus*, *supra*, 139 Cal.App.4th at p. 685 [appellate court does not address argument addressed at trial level in support of anti-SLAPP motion where it is abandoned on appeal].)

As demonstrated by the papers filed in support of and in opposition to the motion to strike the complaint, the chief issue in dispute was Shen's alleged breaches of the confidentiality provisions of the agreements. Shen declared that she "never violated [her] promise not to speak about the terms of the settlement" of the wage claim. She also declared that she never violated the terms of the severance agreement.

In opposition to the motion, Ma Labs submitted the declaration of Lok San (Susanna) Lou (Lou declaration). Lou declared that Shen had told her she was suing Ma Labs. Sometime in 2010, Shen told Lou "she'd won the lawsuit . . . . She also said that she did not come to talk to [Lou] about the lawsuit with the Company, since she'd already won."

Ma Labs submitted additional evidence in support of its claim that Shen breached the confidentiality provisions of the two agreements. This included several declarations by company executives and employees—Abraham Ma, Christine Roa, Richard Chou, Guo Lin Hu—that each of them had heard near the end of 2010 (i.e., after execution of the agreements) that other employees had learned about Shen's settlement with the company and the dollar amount of that settlement. And two of these employees (Ma and Rao), as well as Christy Yee (human resources/payroll manager), Helen Guan (human resource manager), and Vivian Yu (senior accounting manager)— the employees at Ma Labs who knew about the settlement agreements—each declared that he or she did not disclose to anyone the disposition of that case, or the terms of (or even the existence of) the settlement agreements. These declarations support, by the process of elimination, that it was Shen who breached the confidentiality provisions of the settlement agreements.

19

Ma Labs also presented evidence—interrogatory responses submitted by five of the plaintiffs in the *Tian* litigation—indicating that they had learned that a worker (whom some of the plaintiffs identified as Shen) had brought a claim or suit against Ma Labs and had won the case. Some of these plaintiffs indicated that one of their attorneys, Litton, had represented Shen. Further, Ma Labs submitted copies of declarations filed in the *Tian* litigation by two employees indicating they had been told that Shen had settled her case with Ma Labs and had received a specific amount ($7,000) as a result.

Shen filed written objections to all of the above-described evidence submitted by Ma Labs, and her counsel requested a ruling on them at the hearing on the motion. The court below failed to rule on the objections, holding that the objections "do not serve as a basis for this ruling. With regard to the first, second, and fourth causes of action, the Court does not reach the evidentiary prong of the anti-SLAPP analysis." Thus, Shen preserved her evidentiary objections, notwithstanding the court's failure to rule on them. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532-532 (*Reid*) [evidentiary objections made in writing or at hearing on summary judgment motion preserved].)

On appeal, Shen argues there was no admissible evidence presented that she breached the confidentiality provisions of the agreements. Because only evidence that would be admissible at trial may be presented in connection with the plaintiff's showing a probability of prevailing on its claims (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 370; *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1497-1498), we consider Shen's evidentiary objections here. Because we deem pivotal the statements made in the Lou declaration, our focus will be upon Shen's evidentiary objections to that declaration.

Although appellate courts review de novo whether the two prongs necessary for granting a special motion to strike have been satisfied, review of rulings on evidentiary objections are reviewed for abuse of discretion. (*Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1348, fn. 3.) At least one court has held—based upon applying the holding in *Reid*, *supra*, 50 Cal.4th at page 534, which concerned evidentiary objections in summary judgment motions—that if the trial court fails to rule on

20

evidentiary objections in a special motion to strike, it is presumed that the objections have been overruled. (*Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1480, fn. 7 (*Zucchet*).) We find this proposition debatable, because *Reid*'s holding was based upon the summary judgment statute that specifically references evidentiary objections (see § 437c, subd. (c) [in ruling on motion, "court shall consider all evidence set forth in the papers, except that to which objections have been made and sustained by the court"]), while section 425.16 makes no mention of evidentiary objections. But regardless of whether we review the trial court's presumed overruling of objections for abuse of discretion or address the objections to the Lou declaration in the first instance, we find the evidence admissible.

Shen objected on the grounds of "[s]peculation, vague and ambiguous, lacks foundation, [and] hearsay without an exception" to three separate statements within Lou's declaration: (1) "[Lou] was aware that Bing Shen was suing the Company because she had told [Lou] that before [Shen] asked for leave"; (2) at some time in 2010, Shen talked with Lou in the lunchroom and "[Shen] said she'd won the lawsuit"; and (3) in the same conversation, "[Shen] also said that she did not come to talk to [Lou] about the lawsuit with the Company, since she'd already won." Shen also objected to the prefatory statement concerning the timing of Lou's above-described conversation with Shen—"At some point in 2010, Bing Shen came to talk to me"—on the grounds of "[s]peculation, vague and ambiguous, lacks foundation, [and] irrelevant."[6]

Shen's objections are without merit. The hearsay objections to Lou's declaring what Shen told her—that she was suing Ma Labs and (later) that she had won the lawsuit—are not hearsay because they were not "offered to prove the truth of the matter[s] stated." (Evid. Code, § 1200, subd. (a).) The declaration was not offered to

---

[6] Objections to other portions of the Lou declaration are not mentioned here, because those portions of the declaration are not essential to our disposition of this appeal.

prove that Shen had sued Ma Labs or that she had "won" the lawsuit. Rather, it was offered to show that Shen had made the statements to Lou, whether or not they were true. (See, e.g., *People v. Alexander* (2010) 49 Cal.4th 846, 908 [defendant's requests for information about witness and his message to witness to " 'stay strong' " not inadmissible hearsay; evidence was not offered for its truth, but to show "the fact that defendant made the statements"].) Indeed, were Shen's hearsay position viable, it might be impossible for Ma Labs to establish breaches of the confidentiality provisions of the agreements unless Shen herself admitted the breaches.

We likewise find no merit to Shen's objections to the Lou declaration based upon lack of foundation, speculation, vagueness, ambiguity, and relevance. Although Shen argues that the Lou declaration "is so impermissibly vague as to make it . . . worthless," we disagree. Shen asserts that the timing of her alleged statements referenced by Lou is uncertain, and that they could have occurred before her dispute with the company was even settled. She also claims the reference to " 'the lawsuit' " is ambiguous. But on its face, the declaration may be reasonably construed as Shen having told Lou, after the conclusion of her dispute with the company, that she had prevailed. Matters of pinpointing the exact timing of the conversation and what Shen meant by her statements to Lou are ones that may be left to cross-examination of Lou at trial. The content of the Lou declaration is not so ambiguous or vague as to warrant it being excluded. And the foundation of Shen's statements is established. Lou indicated that Shen had spoken to her in the lunchroom sometime in 2010. Shen "said she'd won the lawsuit," and then reiterated that she "had *already* won." (Italics added.) Lou also stated that Shen had told her in that conversation that "she was not happy working for the Company to explain . . . why she had decided not to return to work." Lou thus provided additional context to her conversation with Shen, providing foundation for Ma Labs' claim that the conversation constituted breaches of the confidentiality provisions of the agreements.

There was thus admissible evidence presented by Ma Labs supporting Shen's breaches of the confidentiality provisions. And the additional evidence presented from at

least four executives and employees of Ma Labs that they were not responsible for leaking information about the company's settlement with Shen—coupled with significant evidence that a number of people became aware, after the conclusion of her case, that Shen had settled with Ma Labs—constituted circumstantial evidence of the breach of the agreements. (See *Hasson v. Ford Motor Co.* (1977) 19 Cal.3d 530, 548 (*Hasson*) [circumstantial evidence that is relevant is admissible; fact that it is circumstantial does not preclude it from being " 'substantial' "], overruled on another ground in *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572; *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218 (*HMS Capital*) [holding plaintiff made prima facie showing in opposing anti-SLAPP motion through circumstantial evidence establishing malice element of malicious prosecution claim].) While we recognize that Shen presented significant competing evidence that she did not disclose anything about her disputes with Ma Labs that would have constituted breaches of the confidentiality provisions of the agreements, at this juncture we must accept as true the evidence that is favorable to the plaintiff. (*Soukup*, *supra*, 39 Cal.4th at p. 269, fn. 3, 291.) We do not weigh the evidence or assess credibility in disposing of a special motion to strike under section 425.16; we consider the defendant's evidence to determine whether as a matter of law it defeats the plaintiff's claims. (*1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 585.) Based upon the evidence presented, Ma Labs made a prima facie showing of breaches of the confidentiality provisions to support the court's order relating to the first, second, and fourth causes of action.[7]

Lastly, Shen contends that Ma Labs did not present evidence as to damages. She argues there was no "proof presented by Ma Labs . . . that Shen convinced anyone to

---

[7] We acknowledge there was a significant amount of additional evidence presented by Ma Labs to make its showing, through circumstantial evidence, that Shen breached the confidentiality provisions of the settlement agreements. Shen objected to that additional evidence. Because we determine the Lou declaration is sufficient to establish a prima facie case, we need not address Shen's objections to this additional evidence.

23

assert their [*sic*] own claims against Ma Labs." To the contrary, Ma Labs presented evidence that its president, Abraham Ma, and its chief executive officer, Christine Rao, both considered the confidentiality provisions of the agreements to be material terms, and they would not have authorized settlement had they known that Shen or her representatives did not intend to abide by their confidentiality terms.

In addition, Mark Musto, counsel for Ma Labs, who negotiated the settlement of the DLSE wage claim and the overtime claim, declared that (1) Shen's agreement to confidentiality "was a fundamental and material element of the [prior] oral settlement" of the wage claim; (2) "[t]he predicate for th[e] second settlement was the confidentiality of <u>both</u> agreements[,] including their existence, terms, and any payments made thereunder" (original underscoring); and (3) notwithstanding the confidentiality provisions of the two agreements, five of the plaintiffs in the *Tian* litigation had served answers to interrogatories establishing that they and their attorneys had been informed that Shen had " '**won her case**,' " that she had been represented by Litton, and that they had learned this information after they had been terminated (i.e., after execution of the two agreements by Shen). (Original bold.) Musto also declared that Ma Labs (1) had not received the benefit of its bargain because of Shen's breaches of the confidentiality provisions of the agreements, (2) had been required to defend itself in the *Tian* litigation, and (3) had incurred other related expenses.

Moreover, there was evidence presented in the form of plaintiffs' responses to interrogatories in the *Tian* litigation that bear on the question of damages. Those responses include statements by one or more *Tian* plaintiffs that (1) they were aware that Shen, represented by their counsel (Litton), had filed a claim against Ma Labs with the Labor Commissioner and had "won"; (2) part of the "background" leading to the termination of their employment was Shen's claim against the company, which she won, in part, because the company did not have adequate pay records; and (3) Shen was a witness to company practices relevant to their claims. The evidence submitted by Ma Labs thus established that the confidentiality provisions of the agreements were material

24

terms, and it provided circumstantial evidence of a causal link between Shen's alleged breaches of these provisions and damage to Ma Labs. That damage included, among other things, having to defend the *Tian* litigation. (See *Hasson*, *supra*, 19 Cal.3d at p. 548; *HMS Capital*, *supra*, 118 Cal.App.4th at p. 218.)[8] Of course, Ma Labs may be required to demonstrate this link by showing that Shen's alleged disclosure was a "substantial factor" in causing damage to the company, i.e., the initiation and prosecution of the *Tian* litigation. (See *Haley v. Casa Del Rey Homeowners Assn.* (2007) 153 Cal.App.4th 863, 871.) But that is not a matter that need be proved at the early stages of this action. (See, e.g. *Manhattan Loft, LLC v. Mercury Liquors, Inc.* (2009) 173 Cal.App.4th 1040, 1057-1058 [plaintiff made adequate showing of damages in opposition to anti-SLAPP motion, through declaration of its manager stating that as result of defendant's conduct in filing lis pendens, plaintiff could not sell residential condo units, and real estate market had declined, resulting in lost sales].)

        D.     Conclusion

Shen's alleged statements about her DLSE claim and settlement were not protected under section 425.16(e)(2). Because the wage claim had been settled and the DLSE proceeding had been dismissed, Shen's alleged communications did not concern "issue[s] under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16(e)(2).) Furthermore, after consideration of the pleadings and the evidence presented, we conclude that Ma Labs made a sufficient showing that its claims have " 'minimal merit.' " (*Soukup*, *supra*,

---

[8] To the extent Shen objected below to this evidence (i.e., statements in Musto's declaration, and statements contained in interrogatory responses of *Tian* plaintiffs), she does not renew her position here, and we deem such objections forfeited. (*Paulus*, *supra*, 139 Cal.App.4th at p. 685.) We have in any event considered Shen's objections. Assuming they were overruled by the trial court (see *Zucchet*, *supra*, 229 Cal.App.4th at p. 1480, fn. 7), we find no abuse of discretion. Considering the objections in the first instance, we would overrule them.

39 Cal.4th at p. 291.)  Accordingly, the special motion to strike the first, second, and fourth causes of action of the complaint was properly denied.

DISPOSITION

The order denying appellant Bing Shen's special motion to strike the first, second, and fourth causes of action of respondent Ma Laboratories, Inc.'s complaint pursuant to the anti-SLAPP statute is affirmed.

_____
                    Márquez, J.

WE CONCUR:


_____
Bamattre-Manoukian, Acting P.J.



_____
        Grover, J.